# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| L.V. CRAWFORD and | ) | |
| YVETTE CRAWFORD , | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  3:09CV247-PPS-CAN |
| | ) | Case No.  3:09CV295-PPS-CAN |
| COUNTRYWIDE HOME LOANS, INC., | ) | |
| LAPORTE COUNTY BOARD OF | ) | |
| COMMISSIONERS, LAPORTE COUNTY | ) | |
| SHERIFF MICHAEL F. MOLLENHAUER, | ) | |
| GARY DILK, and JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED OPINION AND ORDER

This opinion and order were originally issued on August 16, 2010, granting summary

judgment to defendant Countrywide Home Loans and against plaintiffs Yvette and L.V.

Crawford.  By its July 21, 2011 opinion, the Seventh Circuit Court of Appeals affirmed this

court's judgments in all respects, but vacated my order and remanded with instructions to enter a

"new order specifying which aspects of the Crawfords' complaint were dismissed on

jurisdictional grounds and remanding those aspects to the state court from which the case was

removed." [DE 110-1, p.1]. Following this direction, I here re-issue the vacated August 16

opinion in an amended form[1] so that it remands the two claims over which there is no subject

matter jurisdiction.  In all other respects, the opinion and order are unchanged.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

---

[1] The Court of Appeals has mistakenly referred to this court's order of "August 10."  No
order was issued here on that date, and it is clear that the Seventh Circuit means to refer to my
dispositive order dated August 16.

Like a lot of people these days, L.V. and Yvette Crawford, husband and wife, had difficulty paying their mortgage. Sadly, they were eventually evicted from their home in La Porte, Indiana in May 2009, following foreclosure proceedings in state court. Taking the offensive, the Crawfords came to federal court and filed what can only be described as a scattershot complaint, alleging nearly every claim under the sun. Their second amended complaint [DE 50] sets forth an astounding twenty-two separate claims for relief relating to the foreclosure and eviction.[2] The claims against all defendants other than mortgage lender Countrywide Home Loans, Inc. were dismissed by my order of February 12, 1010 [DE 67].[3] Countrywide now seeks summary judgment. The Crawfords oppose the summary judgment motion, and have filed their own motions asking me to take judicial notice of certain matters and to strike one paragraph of an affidavit relied upon by Countrywide. Before getting into the straightforward facts of this case, I need to discuss the summary judgment standards more than I might otherwise because they bear greatly on the ultimate disposition of this case.

**Legal Standards**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986.) A genuine issue of material fact exists when "the evidence is

---

[2] The second amended complaint sets forth each cause of action in a separate numbered paragraph, identifying each claim by an ordinal reference, "First Claim" through "Twenty First Claim." Two distinct "Tenth Claims" are pled, apparently in error.

[3] The Crawfords have never succeeded in pleading against Bank of America as a party-defendant. *See* DE 67 and 91. References to Bank of America in the operative second amended complaint will therefore be disregarded.

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986.) "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

A party opposing a summary judgment motion "may not rely merely on allegations or denials in its own pleadings" but rather must introduce affidavits or other evidence to "set forth specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). In other words, it's put up or shut time. *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009).

As the party seeking summary judgment, Countrywide is required to (and has) filed its "Statement of Material Facts Not in Dispute,"supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence, as to which Countrywide contends there is no genuine issue. [DE 73, pp.11-14].  The local rules of this court further require that a party opposing summary judgment prepare and file "a 'Statement of Genuine Issues' setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated."  N.D.Ind. L.R. 56.1(a).  Pursuant to Local Rule 56.1(b), the consequences of failing to demonstrate the existence of genuine fact disputes in this manner are significant:

> the court will assume that the facts as claimed and supported by admissible
> evidence by the moving party are admitted to exist without controversy, except to
> the extent that such facts are controverted in the "Statement of Genuine Issues"

filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

The Crawfords' opposition here contains two enumerated paragraphs labeled as their "Statement of Genuine Issues." [DE 83, p.1]. Rather than the factual recitations contemplated by the Local Rule or any direct response to Countrywide's asserted facts, these two paragraphs express legal conclusions: the Crawfords were "enticed into a mortgage loan agreement...which was predatory, unconscionable, and unfair" (¶1), and Countrywide has "been identified as a predatory lender by a series of cases brought by state Attorneys General" and "its actions have been shown to be discriminatory toward African Americans" (¶2). These assertions are not factual, they not supported by evidence, and they are not shown to be material. A fact is "material" only if it might change the outcome of a claim under the applicable law, and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Because Countrywide has done what the applicable rules require of it in support of its motion for summary judgment, and because the Crawfords have failed successfully to demonstrate the existence of genuine disputes of the facts specifically stated and supported by Countrywide, I must assume that Countrywide's facts "are admitted to exist without controversy." N.D.Ind. L.R. 56.1(b). Those facts are as follows.

### Relevant Facts

Doing business as "America's Wholesale Lender," Countrywide originated a mortgage loan to the Crawfords on or about November 5, 2001 for a property located in La Porte, Indiana. Shortly thereafter, Countrywide sold the loan to Fannie Mae but Countrywide remained the servicer on the loan. After the Crawfords defaulted on their mortgage payments, Countrywide

filed a foreclosure action in the LaPorte Circuit Court, on March 30, 2006. The Crawfords, represented by attorney Gary Dilk, filed an answer to the foreclosure complaint on June 5, 2006. Countrywide filed a motion for summary judgment in the foreclosure proceeding on June 21, 2006, and the motion was granted on August 4, 2006. On that same date, Countrywide assigned its rights and interest in the judgment to Fannie Mae as the owner of the loan.

On September 26, 2006, after Countrywide had filed its praecipe for sheriff's sale of the property, the order of sale was issued to the sheriff. A sheriff's sale was conducted on December 13, 2006, and afterward a sheriff's deed to the property in favor of Fannie Mae was recorded on January 8, 2007. On August 2, 2007, almost nine months after the sheriff's sale, the Crawfords filed in the foreclosure proceeding a Verified Motion for Relief from Judgment. That motion was briefed by the parties, and a hearing held on January 10, 2008. The LaPorte Circuit Court denied the Crawfords' Motion for Relief from Judgment on June 6, 2008. On June 25, 2008, Fannie Mae, through counsel for Countrywide as servicer of the loan, filed its Motion for Writ of Assistance with the LaPorte Circuit Court, seeking to enforce the judgment and sheriff's deed against the Crawfords, who at that time remained in possession of the property. The LaPorte Circuit Court granted the Motion for Writ of Assistance and issued a writ of eviction on June 25, 2008. A week later, the Crawfords filed a notice of appeal as to the denial of their Verified Motion for Relief from Judgment.

On or about October 1, 2008, the Crawfords also filed a Motion to Stay Enforcement of the Judgment. Countrywide objected to the stay, and in the alternative asked the LaPorte Circuit Court to set an appeal bond as security for any stay granted. On October 27, 2008, the LaPorte Circuit Court issued its ruling which held in abeyance the Motion to Stay Enforcement of the

Judgment, subject to the Crawfords' monthly payment of $1,200.00 to the Clerk of Court to be held in an escrow account pending the Crawfords' appeal. The order expressly provided that in the event the Crawfords failed to make payment when due, their Motion to Stay Enforcement would be deemed denied and Countrywide could proceed to enforce the Writ of Assistance previously issued by the court.

On November 14, 2008, Countrywide filed a Notice of Default of Order to Stay Enforcement of Judgment, advising the LaPorte Circuit Court that the Crawfords had only deposited $500.00 with the Clerk (not the $1,200.00 required by October 31, 2008), and that based on the court's previous order deeming the motion to stay denied in such an event, Countrywide intended to proceed to enforce the Writ of Assistance.

The affidavit of Melissa Viveros, filed in support of Countrywide's motion for summary judgment, attests that she was charged with responsibility and authority for servicing the Crawfords' loan and has personal knowledge of the facts and events involved in the case. Ms. Viveros further attests that at no time has the Crawfords' race or disabled status factored, in whole or in part, into Countrywide's actions against the Crawfords [DE 72-2, ¶13], and that all of Countrywide's actions against the Crawfords were taken because of the Crawfords' default on the mortgage and failure to make the payments required to stay enforcement of the foreclosure judgment [DE 72-2, ¶14].

## Motions to Strike and to Take Judicial Notice

The Crawfords have filed a motion to strike paragraph 13 of the affidavit of Countrywide representative Melissa Viveros. The affidavit identifies Viveros as "the custodian of the accounts and records pertaining to the subject loan, Note and Mortgage" and as a person

"charged with responsibility and authority for servicing the subject loan and all matters pertaining thereto." [DE 72-2, ¶3]. Contrary to the assertion of the Crawfords in their motion to strike, Viveros expressly attests that she has "personal knowledge of the facts and events involved in the instant cause of action." *Id*. As previously noted, the paragraph challenged by the Crawfords reads as follows:

> "13. At no time has the Crawfords' race or disabled status factored, in whole or in part, into Countrywide's actions against the Crawfords."

The Crawfords argue that Viveros' assertion in ¶13 as to the non-existence of potentially unlawful motivation is conclusory and is not shown to be competently made. The argument is unconvincing. Ms. Viveros does attest to personal knowledge of the servicing of the Crawfords' loan, and the Crawfords' mere contradiction of that assertion without any factual support is itself conclusory. Viveros' professed familiarity with the facts and events is adequate support for a statement which can be interpreted to mean that, to Ms. Viveros' knowledge, race and disability played no role in the decisionmaking concerning the foreclosure proceedings. The statement expresses an opinion reasonably based on her observation and professed first-hand experience with the matter. "[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir.2003), quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc). The challenged statement here does not run afoul of these principles.

In any event, I note that the Crawfords have not challenged ¶14, in which Viveros offers the statement that "Countrywide has taken all of the foregoing and other relevant actions against the Crawfords because of the Crawfords' default under the loan documents and failure to make the payments as required to stay enforcement of the judgment."  Even without a denial of discriminatory motive, this unchallenged assertion that the foreclosure was motivated entirely by the Crawfords' defaults would defeat the Crawfords' claims of unlawful discrimination where the Crawfords have offered *no evidence at all* of discriminatory motive in Countrywide's decisions to seek foreclosure on their mortgage.  So the motion to strike ¶13 of the Viveros affidavit [DE 82] will be denied.

The Crawfords have filed two motions asking me to take judicial notice of certain matters.  The first such motion filed June 2, 2010 [DE 84] refers to settlements between Countrywide, Bank of America and the Attorneys General of Indiana, Illinois, California and New York, as well as papers written by the Federal Reserve Bank of New York and the Federal Reserve Bank of Atlanta on the subject of discrimination in mortgage pricing.  Although the motion [DE 84] does not mention it, the memorandum in support of the motion [DE 85] references an additional matter, a speech by the Secretary of the Department of Housing and Urban Development.  The second motion [DE 87] seeks judicial notice of a Consent Judgment and Order entered June 7, 2010 in the United States District Court for the Central District of California in a case involving Countrywide and the Federal Trade Commission, as well as the FTC's news release concerning the matter.

The taking of judicial notice is governed by Fed.R.Evid. 201.  Rule 201(b) addresses the kinds of facts of which judicial notice can be taken: "A judicially noticed fact must be one not

subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The Crawfords seek judicial notice not of particular discrete facts, but of a number of whole documents. Does this mean they ask me to take judicial notice of every factual statement in each document? Why is this a matter of judicial notice and not more generally the admissibility of the documents they have identified? Further militating against the Crawfords' requests is the fact that they have not submitted any of the materials with their motions, so I have not even been presented with the matters to review.

Even so, I can conclude that the Crawfords do not offer properly delineated adjudicative facts of which judicial notice could be taken. Adjudicative facts are things like a stock's closing share price on a given date, the time of the sun's rising on a given date, and whether the records of a public agency reflect that a license has been issued. [DE 93, p.2]. See also *Indiana Practice Series: Trial Handbook for Indiana Lawyers* §13.11 (2009). By comparison with such examples, the matters for which the Crawfords seek judicial notice are more akin to an economist's paper on *why* a stock price closed where it did, an environmental scientist's speech on global warming and its effects, and the Consent Judgment from another lawsuit about a licensee's professional misconduct – none of which could remotely be noticed judicially. Both motions for judicial notice will be denied.

## Analysis

Although not raised by the parties, as a threshold observation I note that some of the Crawfords' claims constitute in essence a challenge to the outcome of the state court foreclosure

proceedings, and to that extent they are barred by the *Rooker-Feldman* doctrine or the like.[4]

*Rooker-Feldman* bars federal lawsuits in which "a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Sides v. City of Champaign*, 496 F.3d 820, 824 (7th Cir. 2007). The purpose is to prevent state-court losers from attempting an "end run around an adverse state court ruling." *Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003).

Boiled to its essence, the *Rooker-Feldman* doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments … [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (quoting *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)). Therefore, if a claim is barred by the *Rooker-Feldman* doctrine, the federal court lacks subject matter jurisdiction over it. *Id.*

Countrywide's motion ignores *Rooker-Feldman*. Instead, it challenges the merits of the various legal doctrines pled by the Crawfords. Perhaps they chose this tack because a dismissal under *Rooker-Feldman* is without prejudice whereas dismissals under Rule 56 are obviously with prejudice. *Frederiksen v. City of Lockport*, 384 F.3d 437, 439 (7th Cir 2004). *Rooker-Feldman* is not implicated in most of Crawford's claims. Where it is, I will specifically note it.

I am compelled to note at the outset that the Crawfords' response to the summary judgment motion is long on generalities on the subject of predatory lending and about the unfairness of their treatment, but short on evidence and analysis of their particular claims. I will

---

[4] The *Rooker-Feldman* doctrine derives its name from two decisions of the United States Supreme Court, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

nonetheless analyze each legal cause of action and give the Crawfords the benefit of any genuine disputes of fact for which there is evidence on both sides, determine whether the legal claim could possibly succeed.

For their First Claim, the Crawfords allege that Countrywide violated their rights guaranteed by the Fourteenth Amendment of the United States Constitution, and bring a claim under 42 U.S.C. §1983. More specifically, the Crawfords complain that Countrywide acted so as to deprive them of "fundamental fairness in the foreclosure and eviction" and of "their rights to be treated similarly to other persons similarly situated." [DE 50, ¶24]. This claim appears to be a direct attack on the foreclosure proceedings which implicates *Rooker-Feldman.* In other words, the Crawfords appear to be complaining about an injury caused by the state court judgment. Dismissal is therefore appropriate under *Rooker-Feldman*. *See e.g. Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (federal challenge to a foreclosure proceeding properly dismissed under *Rooker-Feldman*); *Garry v. Geils*, 82 F.3d 1362, (7th Cir. 1996) (same); *Wright v. Tackett*, 39 F.3d 155, 156-57 (7th Cir. 1994) (same).

Even if I am incorrect on the *Rooker-Feldman* grounds, dismissal would be appropriate in any event. Because the First Claim several times alleges that Countrywide acted "under color of state law," it appears that the Crawfords recognize that claims under §1983 are limited to defendants who act with the legal authority and power of state government. Countrywide seeks summary judgment on this claim because it is not a state actor, but instead a private commercial enterprise with no governmental authority.

The Crawfords respond that Countrywide rendered itself a "state actor" for purposes of this claim by "using the Indiana state legal process and instigating action to foreclosure (*sic*)

upon and evict the Crawfords, as part of Countrywide's discrimination against them." [DE 83, p.13]. Case law makes it clear that a private party's use of legal process, including the courts, does not convert its private action into governmental action subject to claims under §1983: "the use of a courthouse is not state action." *Bloomer Shippers Ass'n v. Illinois Central Gulf R. Co.*, 655 F.2d 772, 776 (7th Cir. 1981), citing *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149 (1978). The Supreme Court has said that "our cases make clear that the 'joint participation' standard is not satisfied when a private citizen does no more than invoke a presumptively valid judicial process in pursuit only of legitimate private ends." *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 948 (1982). All of the Crawfords' claims that are dependent upon a showing that Countrywide was a state actor are subject to summary judgment.

The Crawfords' Second Claim is subject to summary judgment in Countrywide's favor, for basic reasons first set forth in the February 12 order on the motions to dismiss:

> The Crawfords' Second Claim, as set forth in ¶25, fails to state a claim for relief because, on its face, it literally states only that there "is a dispute between the parties as to their respective rights, obligations, and liabilities concerning the property, the mortgage, and associated note." Although the third (and final) sentence of the Second Claim attempts to specify a number of "issues" involved in the dispute, the language makes no allegation of actionable conduct on the part of any defendant in violation of any particular law or legal principle.

The Crawfords now refer to the Second Claim as a claim for declaratory judgment "which could include a declaration that the mortgage transaction was unconscionable." [DE 83, p.11]. The claim that the mortgage was unconscionable is addressed below with respect to the Crawfords' Seventh Claim, in which the claim is separately and expressly made. Because no independent

viable claim for relief is stated in the Second Claim, it will be subject to summary judgment in Countrywide's favor.

Piggybacking on the first two claims, plaintiffs' Third Claim asks the court to "determine their rights" under five federal statutes they believe are applicable to their situation: the Real Estate Procedures Act (RESPA), 12 U.S.C. §§2601 *et seq.*; the Home Ownership and Equity Protection Act (HOEPA), 15 U.S.C. §1639; the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§1691 *et seq.*; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692; and the Fair Housing Act (FHA), 42 U.S.C. §§3601 *et seq.* Neither in the second amended complaint nor in response to the summary judgment motion do the Crawfords offer a theory applying law to facts explaining the manner in which each of these statutes was allegedly violated or why a declaration of rights is needed. In support of its summary judgment motion, Countrywide offers reasons why none of these five statutes can provide plaintiffs with any relief here.

As to RESPA, there is no private right of action except for three circumstances which are not the basis of the Crawfords' claim here. *Morrison v. Brookstone Mortg. Co., Inc.*, 415 F.Supp.2d 801, 806 (S.D.Ohio 2005). The first of those three situations is a lender's violation of disclosure requirements or failure to respond to qualified written requests by borrowers under 12 U.S.C. §2605. *Daw v. Peoples Bank & Trust*, 5 Fed.Appx. 504, 505 (7th Cir. 2001). The second is the existence of improper "kickbacks" in the real estate settlement business, actionable under 12 U.S.C. §2607. *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 627 (7th Cir. 2001). The third and last circumstance is an improper requirement that a borrower procure title insurance from a particular title company, in violation of 12 U.S.C. §2608. *Allison v. Liberty*

*Savings*, 695 F.2d 1086, 1088 n.3 (7th Cir. 1982). The Crawfords' claim is not based on any of these circumstances. So Countrywide is entitled to summary judgment on a RESPA-based claim.

HOEPA concerns disclosures required to be made within three days after closing of certain kinds of loans. *See* 15 U.S.C. §1639(b)(1). ECOA applies to the early stages of loan origination, prohibiting lenders from discriminating against people receiving public assistance when considering the creditworthiness of loan applicants. Neither of these contexts is presented by the Crawfords' allegations. As a matter of law, a claim for a determination of rights under HOEPA or ECOA is not viable here, where the facts alleged have nothing to do with the loan origination or the original closing of the loan.

Next, plaintiffs invoke the FDCPA. But the FDCPA does not apply here because Countrywide is a creditor and not a "debt collector" within the meaning of the statute, which specifically excludes mortgage servicing companies from its definition of "debt collector." *Nwoke v. Countrywide Home Loans, Inc.*, 251 Fed.Appx. 363, 364-65 (7th Cir. 2007) [Countrywide not a "debt collector" for FDCPA purposes when it attempted to collect its own debt using its own name]; *Mansour v. Cal-Western Reconveyance Corp.*, 618 F.Supp.2d 1178, 1182 (D. Ariz. 2009). A helpful summary of the relevant principles is found in a recent decision of the Western District of Michigan:

> Title 15 U.S.C. §1692a(6)(F)(iii) provides that the term "debt collector" does not include a person collecting or attempting to collect a debt to the extent that such activity "concerns a debt which was not in default at the time it was obtained by such person." "The legislative history of section 1692(a)(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Company*, 756 F.2d 1197, 1208 (5th Cir. 1985), modified on other grounds, 761 F.2d 237 (5th Cir. 1985). *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996)

14

(no FDCPA claim against a loan servicer because it acquired contracts at the time
of sale and before default).

*Gathing v. MERS, Inc.*, 2010 WL 889945 (W.D.Mich. March 10, 2010).

In dictum, the Seventh Circuit has also noted that the FDCPA does not apply to a bank
pursuing a mortgage foreclosure because it was a creditor rather than a debt collector.
*Transamerica Fin. Serv., Inc. v. Sykes*, 171 F.3d 553, 554 n.1 (7th Cir. 1999).  A second line of
analysis may support the same conclusion, namely that a foreclosure lawsuit undertaken only in
an effort to enforce a security interest, and not to obtain a deficiency judgment against the
borrowers, does not constitute debt collection within the meaning of the Act.  *See Rosado v.
Taylor*, 324 F.Supp.2d 917, 924-26 (N.D.Ind. 2004). As in *Gathing*, here Countrywide began
servicing the mortgage loan shortly after its origination, and before the default.  In seeking
foreclosure, Countrywide was therefore not acting as a debt collector for purposes of the
FDCPA.  The Crawfords fail to distinguish these cases which appear to be fatal to their
invocation of the FDCPA.  Therefore, the claim is subject to summary judgment in
Countrywide's favor.

The final part of the Third Claim is the Crawfords' invocation of the Fair Housing Act,
42 U.S.C. §§3601 *et seq.*   Here the second amended complaint offers no specifics as to the
provision of the Act allegedly violated or the manner of the violation.  I readily conclude that
Countrywide is entitled to summary judgment on this skeletal assertion of legal authority without
explanation of any dispute, alleged violation or injury subject to its application.  The Crawfords
have asserted a more detailed claim under the FHA in their Twenty-First Claim, which I will
discuss more thoroughly below.

The Fourth Claim, asks me to "determine [the Crawfords'] rights" under the Emergency Economic Stabilization Act of 2008.  [DE 50, ¶27].  This legislation created the Troubled Asset Relief Program which has come to be known as "TARP."  The Crawford's claim fails to make a particular assertion of actionable conduct by defendants Countrywide and Bank of America, against whom it appears to be directed as "beneficiaries of billions of dollars" of "federally funded financial assistance."  *Id*.  The Fourth Claim identifies no particular conduct that would give rise to any claim for relief by the Crawfords as the borrowers on a particular mortgage transaction.  What's more, there are several district courts which have persuasively found that TARP did not create a private right of action for homeowners seeking relief where recipients of TARP funds have foreclosed upon loans rather than modify them.  *Pantoja v. Countrywide Home Loans, Inc.*, 2009 WL 2423703 (N.D. Cal. July 9, 2009); *Ung v. GMAC Mortgage*, 2009 WL 2902434 (C.D.Cal. September 4, 2009) (unpublished).  The Crawfords' TARP claim fails as a matter of law.

The Fifth Claim also asks for a determination of the parties' rights, obligations, and liabilities, this time "under the law of the State of Indiana," including the "Constitution of Indiana and...Indiana statutory and common law." [DE 50, ¶28].  As with other enumerated "Claims," this sweeping request for judicial review and analysis of the parties' interaction fails to state a claim particular enough for relief to be considered.  References to the deprivation of rights to fundamental fairness and actions under color of state law again suggest an erroneous assertion that Countrywide is a state actor rather than a private entity.

Specific legal concepts referred to in the Fifth Claim are sections 12 and 23 of Article I of the Indiana Constitution, along with "fundamental fairness" and "rights to be treated similarly

to other persons similarly situated." Section 12 contains the Open Courts clause of the Indiana Constitution, which has been interpreted merely to guarantee "a right of access to the courts" satisfied by the availability of trial in a court of competent jurisdiction, by jury if that is also guaranteed by the constitution. *Martin v. Richey*, 711 N.E.2d 1273 (Ind. 1999); *Lake E. & W.R. Co. v. Watkins*, 62 N.E. 443, 446 (Ind. 1902). As the appropriate legal recourse was available to the Crawfords in the Indiana courts where the foreclosure proceedings occurred, the Crawfords cannot succeed on an Open Courts claim, even if Countrywide were a proper party-defendant to such a claim.

The Crawfords' full and fair opportunity to litigate in the foreclosure action also dooms any Due Course of Law claim pursued under Section 12. The protections of this due process clause "depend not on the particular hardship which may befall a person under exceptional circumstances" but on the "system of jurisprudence, with its provisions for safeguarding the rights of litigants." *Osborn v. Review Bd. of Ind. Employment Sec. Div.*, 381 N.E.2d 495, 500 (Ind.App. 1978). Where the Crawfords' foreclosure occurred through the appropriate channels of the Indiana courts, in which their participation and advocacy were heard, they are unable to show that their rights to due course of law were violated, even if such a claim could be pursued against Countrywide as a private actor.

The Privileges or Opportunities clause of the Indiana Constitution is in Article I, Section 23, and provides a guarantee against the state's General Assembly granting "to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." In addition to Countrywide not being a state actor against whom a §1983 action can be pursued, the facts of which the Crawfords complain do not involve any state law enacted

by the Indiana General Assembly which they attempt to show makes unconstitutional distinctions between classes of citizens. Countrywide is thus entitled to judgment on this claim as well.

The Sixth Claim alleges that "Defendants did not act in good faith as required by the Uniform Commercial Code," although this statement is then supported by two sub-paragraphs of text identical to that under the Fifth Claim in the preceding paragraph referring to concepts of fundamental fairness and equal protection. *Id*. at ¶29(a)&(b). What might have been a straightforward assertion of a claim under the UCC is further muddied by a third sub-paragraph containing sweeping generalizations about the mortgage and associated note's legality "under federal and state law", including the UCC as adopted in Indiana "and the common law regulating mortgages and associated notes in Indiana." *Id*. at ¶29(c). Rather than refer to a particular issue under the UCC, ¶29(c) refers generally to "the Uniform Commercial Code as adopted in Indiana, IC 26-1-3.1-101 et seq."

Countrywide has interpreted the Sixth Claim in accordance with its descriptive preamble's reference to good faith as required by the UCC. The obligation is found in IC 26-1-1-203, which provides that "every contract or duty within IC 26-1 imposes an obligation of good faith in its performance or enforcement." Countrywide argues that the Crawfords' claim fails here because Indiana has not recognized a cause of action for breach of the duty of good faith independent of a claim for breach of contract. The official comment to UCC §1-203 clearly states this principle: "This section does not support an independent cause of action for failure to perform or enforce in good faith....[T]he doctrine of good faith...does not create a separate duty of fairness and reasonableness which can be independently breached." This understanding has

been observed by Indiana courts in several cases cited by Countrywide. [DE #73, pp.15-16]. The Crawfords make no attempt to save their Sixth Claim from these arguments that it does not contain a viable cause of action, and I conclude that it is subject to summary judgment in Countrywide's favor.

The Seventh Claim, consisting of one sentence, alleges without explanation or example that "the contractual agreement between Defendant Countrywide and Plaintiffs is unconscionable and illegal." *Id.* at ¶30. Countrywide argues that here the Crawfords attempt the legally impossible, namely the conversion of affirmative defenses into independent causes of action. Without referring to this claim by its number, the Crawfords argue in opposition to the summary judgment motion that the mortgage and associated note are illegal and unconscionable because of the unequal bargaining power as between them and Countrywide, citing *Weaver v. American Oil Co.*, 276 N.E.2d 144, 147-48 (Ind. 1971).

Unlike *Weaver*, the Crawfords offer no analysis of particular provisions of the challenged contract to show that they are "so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Id.* at 462, citing the Uniform Commercial Code Comment to IC 26-1-2-302. The Crawfords have offered no evidence that the mortgage contract is so unfair that "no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." *Id.*; see also *Franklin Fire Ins. Co. v. Noll*, 58 N.E.2d 947, 949 (Ind.App. 1945). The mortgage loan of substantial sums of money facilitating the Crawfords' purchase of a home does not constitute an "inadequacy of the price .. . so great that the mind revolts at it," allowing the court to "lay hold on the slightest circumstances

of oppression or advantage to rescind the contract." *Id.* Summary judgment on the Seventh Claim is appropriate.

The Eighth Claim alleges by a single sentence that "the Defendants acting wrongfully, individually and in concert, have created, and threatened to create, a nuisance, which has and will injure Plaintiffs and their community." *Id.* at ¶31. This creative attempt to expand the legal concept of "nuisance" is frivolous. Nuisance is defined by statute in Indiana at IC 32-30-6-6 as "[w]hatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property." The gist of a nuisance claim is that the tortfeasor has used his property in a manner that interferes with another property-owner's use and enjoyment of his own property. As one court put it: "The law in respect to nuisances rests upon the maxim, 'every man must so use his own property as not to interfere with that of his neighbor.'" *Albright v. Crim*, 185 N.E. 304, 308 (Ind.App. 1933). The facts the Crawfords complain of do not fit this analysis. Countrywide did not employ its own property in a manner offensive to the Crawfords' use of theirs, but rather invoked a remedy for breach of contract by obtaining and enforcing a foreclosure judgment. These circumstances as a matter of law cannot constitute a nuisance within the meaning of that concept under Indiana law.

The Crawfords' Ninth Claim seeks a declaratory judgment that Countrywide and Bank of America "are not entitled to recover on theories of quantum meruit[,] estoppel in pais, or restitution." *Id*. at ¶32. Even the Crawfords' own statement of this claim reads like an assertion of defenses or counterclaims against the foreclosure action which they have already lost in the state courts. As a challenge to the foreclosure judgment, the Ninth Claim would appear to be

particularly susceptible to the *Rooker-Feldman* jurisdictional bar earlier discussed. *See Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (federal challenge to a foreclosure proceeding properly dismissed under *Rooker-Feldman*); *Garry v. Geils*, 82 F.3d 1362, (7th Cir. 1996) (same); *Wright v. Tackett*, 39 F.3d 155, 156-57 (7th Cir. 1994) (same).

Even if I am incorrect in my evaluation under *Rooker-Feldman* of the Ninth Claim, the legal theories invoked therein are unavailing. No form of estoppel is applicable on the facts of this case. Countrywide has not engaged in conduct that induced the Crawfords' reliance in some way, only then for Countrywide to adopt an inconsistent position that injured the Crawfords. To the contrary, Countrywide suggests that it has been entirely consistent in enforcing its interests under the Crawfords' mortgage. The Crawfords offer no argument in opposition to summary judgment on their Ninth Claim, and so do not demonstrate how they could succeed on any estoppel claim.

To the extent the Ninth Claim seeks restitution for unjust enrichment on a theory of *quantum meruit*, the claim is a nonstarter. The doctrine of *quantum meruit* allows the equitable determination of an amount to be paid for services rendered or some other measurable benefit conferred when no contract exists but the circumstances justify an expectation of payment. *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991); *Turner v. Freed*, 792 N.E.2d 947, 950 (Ind.App. 2003). Because the relationship between Countrywide and the Crawfords was governed by the mortgage and promissory note, the quasi-contractual doctrine of *quantum meruit* does not apply. *Wenning v. Calhoun*, 827 N.E.2d 627, 630 (Ind.App. 2005); *King v. Terry*, 805 N.E.2d 397, 400 (Ind.App. 2004) ["it is the absence of a contractual relationship that

allows a claim in *quantum meruit*"].  Countrywide is entitled to summary judgment on the Ninth Claim.

In their Tenth Claim, the Crawfords attempt to plead a claim under RICO, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§1961, *et seq.*  Countrywide contends that plaintiffs have not adequately pled the nature of the predicate acts allegedly making up the pattern of racketeering activity required for a RICO claim.  Furthermore, Countrywide argues that the undisputed facts demonstrate that Countrywide's conduct in enforcing the foreclosure judgment was lawful and not within the list of racketeering acts found in §1961(1).

Federal courts have long since been wary of the potential for abuse of civil RICO claims, which attract plaintiffs to their treble damages and attorney's fees.  *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025-26 (7th Cir. 1992) ("civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions...RICO has not federalized every state common-law cause of action available to remedy business deals gone sour").  Here the RICO allegations fail to identify the alleged RICO enterprise and predicate acts of racketeering, and in fact merely assert illegal activity without describing the illegal nature of what appear to be routine mortgage transactions.  The Crawfords offer no argument in an attempt to save their RICO claim from the chopping block of summary judgment.  At this stage of the proceedings, in the absence of any attempt to flesh out and support the conclusory invocation of RICO, I find the Tenth Claim to be subject to summary judgment in Countrywide's favor.

In a second claim the complaint refers to as the "Tenth Claim," the Crawfords assert that Countrywide has abused the legal process in seeking the foreclosure by instigating and requesting that the LaPorte County Sheriff send officers and a K-9 dog to the Crawfords' home to order their eviction.[5]  To succeed on an abuse of process claim under Indiana law, a plaintiff must demonstrate that there was a "misuse or misapplication of process for an end other than that which it was designed to accomplish."  *National City Bank v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997).  Because the foreclosure proceeding yielded a proper result for which it was designed, in the form of a Foreclosure Judgment and its enforcement through a Writ of Assistance, I find as a matter of law that there was no abuse of the legal process, and that summary judgment on this claim is warranted.

The Crawfords' response to the summary judgment challenge to the abuse of process claim, and also concerning the emotional distress, trespass and assault claims that follow, is the puzzling assertion that those claims "are not foreclosed because they represent elements of the injuries suffered because of the Fair Housing Act claim." [DE 83, p.12].  This confusing contention is offered without explanation, and utterly fails to establish the continued viability of the second "Tenth Claim" or the Eleventh through Fourteenth Claims, each of which is further discussed below.

---

[5] The statement of the second "Tenth Claim" in ¶34 of the second amended complaint contains a third repetition of several paragraphs of text used previously in ¶28 and ¶29.  To the extent that language references other potential claims and causes of action, it has been earlier addressed in the discussion of the Crawfords' Fifth Claim and Sixth Claim. Countrywide has responded to the Crawfords' pleading of two separate "Tenth Claims" by referring to the second one as the "Eleventh Claim" and then by referring to each succeeding claim of the second amended complaint by the ordinal number one higher than is used in plaintiffs' pleading.  In this order, I will use the designations the plaintiff themselves use in the second amended complaint, rather than convert the ordinals by adding one as Countrywide has done.

Plaintiffs' Eleventh Claim is one for intentional infliction of emotional distress. As the Crawfords recognize, this claim requires extreme and outrageous conduct on the part of the tortfeasor. *Lachenman v. Stice*, 838 N.E.2d 451, 456 (Ind.App. 2005). The Crawfords do not show themselves capable of meeting the rigorous requirements of the claim. Only conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" can support this cause of action. As a matter of law, Countrywide's conduct in foreclosing the mortgage and enforcing the judgment by the available legal process cannot constitute the type of extreme and outrageous action required for the Crawfords to succeed on the Eleventh Claim. Neither is it shown to constitute negligence, as is required of the Crawford's Twelfth Claim, that Countrywide negligently inflicted emotional distress. Countrywide is entitled to summary judgment on both emotional distress claims.

Trespass is the basis of the Thirteenth Claim, which is set out in a single sentence alleging that Countrywide "engaged in the doing of an unlawful act or of a lawful act in an unlawful manner to the injury of the Crawfords and their property." [DE 50, ¶36.] No further explanation of the facts and theory of the claim is offered in the pleading or in response to the motion for summary judgment. Countrywide challenges the claim on the basis that the Indiana cause of action for civil trespass involves the entry of land in possession of another without right to do so. Countrywide cites *Mills v. Kimbley*, 909 N.E.2d 1068, 1076 (Ind.App. 2009). Because Countrywide is not alleged to itself have entered onto the Crawfords' property, and because the Sheriff's Department did so only on the authority of a Writ of Assistance properly issued by an Indiana court, no trespass claim can succeed.

For their Fourteenth Claim, the Crawfords' allege that Countrywide "committed assault in that Countrywide acted with intent to cause an imminent apprehension of a harmful or offensive contact with the Crawfords." [DE 50, ¶38]. This bit of pleading accurately states the elements of assault under Indiana law. *Raess v. Doescher*, 883 N.E.2d 790, 794 (Ind. 2008). Again the claim is made with no additional explanation of its basis in the facts alleged. Countrywide argues that it had no interaction with the Crawfords in any manner that could conceivably be captured in the legal concept of assault. Further, addressing the claim as relating to the eviction actions taken by the Sheriff's Department (even assuming those could be attributed to Countrywide for purposes of liability), Countrywide points out that the actions taken were pursuant to a court-issued Writ of Assistance. Countrywide will be granted summary judgment on the Fourteenth Claim because the Crawfords fail to articulate – much less demonstrate – how Countrywide's conduct could have constituted an assault under Indiana law.

The Fifteenth Claim alleges that all the defendants have breached contracts of which the Crawfords are intended third-party beneficiaries. The baldly stated claim fails to identify the contracts at issue, much less the manner in which they were breached and the basis for the Crawfords' status as third-party beneficiaries. Nonetheless, without quarrel from the Crawfords, Countrywide interprets the claim as one alleging a breach of the Crawfords' mortgage. Relying on the doctrine of merger, Countrywide argues that upon the entry of a foreclosure judgment, the underlying mortgage is extinguished and no further mutuality of obligation exists under it. *United States Mortgage Co. v. Henderson*, 12 N.E. 88, 91 (Ind. 1887). For this reason, and in view of the Crawfords' failure to defend the Fifteenth Claim in opposition to Countrywide's motion, summary judgment will be granted.

The second amended complaint's Sixteenth Claim reads in its entirety: "As a Sixteenth Claim, all Defendants have failed to act in good faith as required by I.C. 26-1-203." [DE 50, ¶40]. The statutory reference is to Indiana's codification of the Uniform Commercial Code, in which the obligation of good faith is set forth in IC 26-1-1-203. Countrywide argues that the Sixteenth Claim is wholly duplicative of the Crawfords' Sixth Claim, so that Countrywide is entitled to summary judgment on the latter ground for the same reasons as the former. I agree, and will grant summary judgment on the Sixteenth Claim on the same basis as expressed earlier with respect to the Sixth Claim.

The Seventeenth and Eighteenth Claims can be treated together. The Seventeenth Claim alleges defendants' violation of Titles II and III of the Americans with Disabilities Act or ADA. Without argument from the Crawfords, Countrywide treats this as a claim of disability discrimination actionable under 42 U.S.C. §12132. The Eighteenth Claim is similar to the Seventeenth, in that it alleges disability discrimination in violation of 29 U.S.C. §794, also known as the Rehabilitation Act. This statute prohibits discrimination on the basis of disability in a person's participation in any program or activity receiving federal financial assistance.

Summary judgment is appropriate on both of these claims, Countrywide contends, because the undisputed facts show that the treatment the Crawfords complain of was not motivated solely by any disability, but by their failure to make the monthly payments required under the Mortgage and Promissory Note. The Crawfords offer no explanation or evidentiary support for their conclusory factual assertion that their disabilities made them vulnerable to exploitation by Countrywide, and fail to demonstrate how such exploitation supports their particular legal claims. On the record before me, I must conclude as a matter of law that the

26

Crawfords' default on their mortgage and not their disability was the reason for the foreclosure action taken against them.  The Seventeenth and Eighteenth Claims are subject to summary judgment in Countrywide's favor.

The Crawfords' next two claims appear to be subsumed in the Fifth Claim, and subject to the same analysis and disposition.  The Nineteenth Claim asserts that the defendants violated Article I, sec. 12 of the Indiana Constitution, the "due course of law" clause.  The Twentieth Claim invokes Article I, sec. 23 of the Indiana Constitution, the "equal rights and privileges" provision.  Consistent with my earlier analysis of the Fifth Claim, these claims are also subject to summary judgment.

The Twenty-First (and final) Claim of the second amended complaint is brought pursuant to the Fair Housing Act (FHA) for discrimination on the basis of race and handicap.[6]  After making factual allegations expressly pertaining to the foreclosure and eviction, the Twenty-First Claim ultimately asserts that Countrywide and all the other defendants violated §3604(f)(1) and §3604(f)(3)(B) of the FHA.  Section 3604(f)(1) prohibits discrimination in the "sale or rental" of a dwelling to any buyer or renter because of a handicap.  Subsection (f)(3)(B) provides that discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services" when necessary to afford a disabled person the use and enjoyment of a dwelling.  In my February 12 order on the co-defendants' motions to dismiss, I noted that §3604 has been described as relating to activities that "prevent people from *acquiring* property," and so

---

[6]  The complaint's reference to §3612, which is "Enforcement by Secretary" appears to be mistaken, and may have been intended to invoke §3613, "Enforcement by private persons."

is not shown to be applicable on the facts pled by the Crawfords. *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 328 (7th Cir. 2004) (emphasis added).

The allegations instead suggest that the Crawfords bring the claim under §3605(a), which addresses discrimination in residential real estate-related transactions: Here's how the statute reads: "It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." On the factual record before me, I can only conclude that the foreclosure and eviction were pursuant to court order, and that they were sought in response to the Crawfords' failure to meet the payment obligations of their mortgage and later of the stay of enforcement of the foreclosure judgment. No claim that these steps were taken because of the Crawfords' race or handicaps is supported by the undisputed facts, and the Crawfords fail to come forward now, in opposition to summary judgment, with evidence of discrimination on the basis of race or disability. Summary judgment will be granted on the Twenty-First Claim.

Only in the last three pages of the Crawfords' 14-page opposition to summary judgment do they address the specific legal claims at issue in this case. Prior to that, the Crawfords engage in a generalized assertion that Countrywide is not entitled to summary judgment because it failed to eliminate the possibility of any dispute of material fact. This is unhelpful because an entitlement to summary judgment does not require such proof of a metaphysical impossibility: "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp*. 475 U.S. 574, 586 (1986).

The Crawfords rely on *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,158 (1970), but do so in a manner that the Supreme Court itself has since rejected:

> [W]e do not think the *Adickes* language...should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, as we have explained, the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.

*Celotex Corporation v. Catrett*, 477 U.S. 317, 325 (1986). Without being required to prove a negative, the movant is entitled to summary judgment if the material facts he can establish to be undisputed are legally sufficient to support judgment in his favor.

The Crawfords also offer sweeping statements which they helpfully summarize as relating to "the economic crisis in which this case is embedded, the litigation brought by state Attorneys-General, and the patterns of mortgage lending and foreclosure discriminatory practices injuring minorities." [DE 83, p.11]. The problem with the Crawfords' approach is that they fail to demonstrate that any mortgage crisis or industry-wide discriminatory practices have a factual relationship to the case at bar or factor in any way in the legal analysis of the twenty-two legal causes of action their complaint asserts.[7] Although critical of Countrywide's effort to

---

[7] The Crawfords seek leave to supplement their opposition to the summary judgment motion with an additional Statement of Genuine Issues pertaining to a June 7, 2010 Consent Judgment entered into by Countrywide, Bank of America and the Federal Trade Commission [DE 88]. I will deny the request. The Crawfords say that the Consent Judgment "strengthens our contention that there is a crisis in the economy, with devastating impact on mortgagor borrowers like the Plaintiffs." [DE 88, p.3]. This is rather stating the obvious but it's neither here nor there. It is not shown to be of legal significance in this case, which is about the

focus on the facts of the Crawfords' own mortgage and foreclosure, the Crawfords fail to respond as the applicable rules require to Countrywide's statement of undisputed facts supported by citation to evidence of record.[8]  Predatory or discriminatory lending practices in the mortgage industry generally are not shown to be relevant to the Crawfords' right to relief on any of their claims.  And those claims are each one either legally defective, for the reasons explained above, or defeated by the undisputed facts and the Crawfords' failure to demonstrate their ability to come forward with proof of facts they would need in support of their claims.

<div align="center">

**Conclusion**

</div>

Plaintiffs' **Motion to Strike Portion of Melissa Viveros' Affidavit [DE 82 in Case No. 3:09CV247]** is DENIED.

Plaintiffs' **Motions to Take Judicial Notice [DE 84 and DE 87 in Case No. 3:09CV247]** are DENIED.

Because under the *Rooker-Feldman* doctrine this court lacks subject matter jurisdiction over the First Claim and Ninth Claim of the second amended complaint **[DE 50 in Case No. 3:09CV247]** to the extent they challenge the outcome of the state foreclosure proceedings against the plaintiffs, those claims are **remanded to the LaPorte County Circuit Court under Cause No. 46C01-0906-PL-210**.

---

particular facts of the Crawfords' default on their mortgage and the sad resulting events that followed.

[8] The single exception is the Crawfords' motion to strike ¶13 of Countrywide's official's affidavit, which I have earlier addressed.  Otherwise, the Crawfords offer no challenge to any of the facts asserted and supported by Countrywide in their Statement of Material Facts Not in Dispute.

In all other respects, defendant Countrywide Home Loans, Inc.'s **Motion for Summary Judgment [DE 72 in Case No. 3:09CV247]** is GRANTED, and the Clerk shall enter judgment accordingly in favor of defendant Countrywide and against Plaintiffs.

The claims against all other defendants having previously been dismissed, these matters are CLOSED.

 **SO ORDERED.**

ENTERED: August 31, 2011    /s/ Philip P. Simon    
             PHILIP P. SIMON, JUDGE
             UNITED STATES DISTRICT COURT